UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LINDA FULLER<br>AND WILLIAM FULLER<br><br>VERSUS<br><br>WAL-MART STORES, L.L.C.<br>AND CLAIMS MANAGEMENT, INC. | CIVIL ACTION<br><br>NO. 12-251-RLB<br><br>CONSENT CASE |

## RULING

Before the Court is a Motion for Summary Judgment filed by Defendants, Wal-Mart Stores, L.L.C. and Claims Management Inc. ("Defendants"), on March 13, 2013. (R. Doc. 12).[1] Plaintiffs sought (R. Doc. 17) and were granted leave on August 2, 2013 (R. Doc. 19) to file their Opposition (R. Doc. 20) beyond the deadlines prescribed by the Court's Local Rules and the Federal Rules of Civil Procedure.[2] Given Plaintiffs' delay in filing their Opposition, the Court gave Defendants until August 12, 2013 to file a reply memorandum without obtaining leave of court. (R. Doc. 19). Defendants timely filed their Reply on August 9, 2013. (R. Doc. 21).

In addition to supporting memoranda, Local Rule 56.1 requires a Motion for Summary Judgment to "be accompanied by a separate, short and concise statement of the material facts"

---

[1] The parties consented to conduct all proceedings before the United States Magistrate Judge (R. Doc. 7). *See* 28 U.S.C. § 636(c)(1) ("Upon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . .").

[2] Local Rule 7.4 requires a party to file its "response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 21 days after service of the motion." Rule 6(d) of the Federal Rules of Civil Procedure grants a party 3 additional days to respond to a motion served upon them by "electronic means." *See* Fed. R. Civ. P. 5(b)(2)(E), (b)(3) (service by electronic means includes service through the court's electronic filing system). Plaintiffs received service of Defendants' Motion on March 13, 2013 through the Court electronic filing system, making their opposition and statement of material facts due by April 6, 2013. *See* LR 7.4 (within 21 days of service — April 3, 2013) and Fed. R. Civ. P. 6(B)(2)(E) (adding 3 days — April 6, 2013).

1

that the movant contends are undisputed. Likewise, a party opposing summary judgment must also include, along with their opposition, "a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." LR 56.2. If the opposing party fails to do so, all of the undisputed material facts set forth in the moving party's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Here, Defendants filed a Statement of Uncontested Material Facts (R. Doc. 12-1) along with their Motion for Summary Judgment, which Plaintiffs failed to respond to by filing a statement of contested facts. Therefore, the facts set forth in Defendants' Statement of Uncontested Material Facts (R. Doc. 12-1) are deemed admitted for purposes of this Motion.[3]

Having allowed the parties to fully brief the substantive issues, and having considered their arguments, the record and the applicable law, the Court **GRANTS** Defendants' Motion for Summary Judgment.

I.  **BACKGROUND**

In this personal injury action, Plaintiffs, Linda Fuller and her husband William Fuller, allege injuries and damages sustained after Linda Fuller slipped and fell in a wet substance at Wal-Mart's Zachary, Louisiana store, on April 17, 2011. (R. Doc. 12-2 at 1).[4] In her deposition, Linda Fuller testified that she was walking alongside her husband while he pushed their grocery cart towards the bakery department of Wal-Mart's store. (R. Doc. 12-2 at 2). According to Plaintiff, she walked ahead of her husband to get strawberry glaze. (R. Doc. 12-2 at 2). While walking back to her husband, Plaintiff slipped on chicken blood and her feet came out from

---

[3] For purposes of the Court's analysis below, summary judgment is appropriate irrespective of the facts that are deemed admitted.

[4] Plaintiffs filed this action on March 26, 2012 in the 19th Judicial District Court in East Baton Rouge Parish, Louisiana. (R. Doc. 1-2 at 1). Plaintiffs amended their Petition on April 19, 2012 to substitute Wal-Mart Louisiana, L.L.C. for Wal-Mart Stores, Inc. as Defendant. (R. Doc. 1-3). Defendants timely removed the action based on diversity jurisdiction on April 27, 2012. (R. Doc. 1).

2

under her as she fell to the floor. (R. Doc. 12-2 at 2). Plaintiff attempted to grab a nearby table of baked goods as she fell, but instead her body twisted and she fell to her knees, hitting her right shoulder on the table. (R. Doc. 12-3 at 11-12). Plaintiff was not looking at the floor and did not see the 6 inch puddle of chicken blood before slipping in it. (R. Doc. 12-2 at 2).

Plaintiff testified that she did not see the source of the puddle of chicken blood and did not notice any trails indicating its origin. Plaintiff was unaware of how long the chicken blood had been on the floor or how it got there. Plaintiff did not have any chicken products in her own cart and did not see any in the carts nearby. (R. Doc. 12-3 at 15). Plaintiff did not receive "information from any source as to whether any Wal-Mart employee knew that there was chicken blood on the floor and failed to clean it up." (R. Doc. 12-3 at 16). Plaintiff did not know if any inspections of the area took place prior to her fall.

William Fuller witnessed his wife's fall and described the puddle of chicken blood as not "real big . . . about fifteen inches." (R. Doc. 12-3 at 18). It was the only substance William Fuller saw on the floor. (R. Doc. 12-3 at 19). William Fuller explained that the marks from his wife's feet were the only "slip mark[s]" through the puddle. (R. Doc. 12-3 at 19). A janitor mopped the area, cleaning the chicken blood from the floor shortly after Plaintiff fell and before the Wal-Mart manager could photograph the chicken blood on the floor. (R. Doc. 12-3 at 16).

According to the record, one to two Wal-Mart employees were in the bakery department and/or vicinity of Mrs. Fuller at the time of her fall. The parties indicate that one of the employees was six to ten feet away, with her back turned to Mrs. Fuller as she stocked baked goods.

In their Motion for Summary Judgment, Defendants argue that Plaintiffs' "case must be dismissed because [they] cannot meet their burden of showing that Wal-Mart had actual or

3

constructive knowledge of the allegedly defective condition." (R. Doc. 12-2 at 5). According to Defendants, "simply show[ing] an allegedly dangerous condition existed without also showing that the condition existed for some time before the fall" precludes Plaintiffs from establishing an essential element of their claim. (R. Doc. 12-2 at 6).

Plaintiffs first suggest summary judgment is inappropriate because Wal-Mart has failed to carry its "burden of producing evidence to exculpate itself from fault" — calling the Court's attention to Wal-Mart's failure to produce video footage of the actual fall or any affidavits of employees in the vicinity of the fall. (R. Doc. 20 at 5, 7) (citing *Smith v. Toys "R" Us, Inc.*, 754 So. 2d 209, 212 (La. 11/30/99). Second, Plaintiffs argue the presence of two employees near the accident creates a genuine issue of material fact as to whether Wal-Mart had constructive knowledge of the spill. (R. Doc. 20 at 7). Finally, Plaintiffs feel it would be unjust to grant Wal-Mart's Motion because they were "unable to secure the depositions of other [identified] Wal-mart employees . . . prior to the discovery cutoff" and they feel they "should have the opportunity to examine" those employees at trial. (R. Doc. 7).[5]

## II.   SUMMARY JUDGEMENT STANDARD

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are

---

[5] Plaintiffs provide no explanation for why they were unable to conduct any specific discovery they deemed appropriate. No request was ever made to extend any discovery deadlines and Plaintiffs have not pointed to any specific discovery that would create a genuine issue as to any material fact.

4

to be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff, on a properly supported defense motion, if the plaintiff fails to make an evidentiary showing in its opposition to the motion sufficient to establish the existence of an element essential to its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323 (quotations omitted).

## III. DISCUSSION

Because the Court's subject matter jurisdiction is based on diversity, Louisiana substantive law applies. *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78-80 (1938).

### A. Mrs. Fuller's slip and fall claim

Louisiana Revised Statute 9:2800.6 governs negligence claims brought against a merchant when a customer falls on a merchant's premises. *See Davis v. Wal-Mart Stores, Inc.*, 774 So. 2d 84, 90 (La. 11/28/00). The statue provides in pertinent part as follows:

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

5

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. R.S. 9:2800.6(B)(1)-(3), (C).[6]

Wal-Mart urges the Court to grant summary judgment because Plaintiffs have not presented evidence of a genuine issue of material fact sufficient to show that Wal-Mart had actual or constructive notice of the condition which caused the damage prior to the occurrence.[7] The Court agrees.

### i. Actual Notice

Actual notice requires some showing by the plaintiff that the defendant actually witnessed the hazardous condition/event, or at least some showing of actual knowledge of a routine and expected dangerous condition at a certain location. *See Blackman v. Brookshire Grocery Co.*, 966 So. 2d 1185 (La. App. 3d Cir. 10/3/07) (defendant had actual notice of spill where fall occurred over 3 minutes after a customer "noticed the spill, [and] walked to the front of the store to report it to management" *Id.* at 1190.). Here, Plaintiffs have not presented any evidence that Wal-Mart's management or any of its employees had actual notice of the spill. In fact, the record indicates that Elizabeth Winfrey — a Wal-Mart employee in the vicinity of Mrs. Fuller at the time of her fall — told her manager, Ashley Sibley, that she had not seen the spill

---

[6] Plaintiff does cite Louisiana Revised State 9:2800.6(B) as controlling law but indicates it applies to "falling merchandise" cases. (R. Doc. 20 at 5). Contrary to Plaintiffs' assertions, "the heightened burden under R.S. 9:2800.6(B) is applicable only in situations where a customer 'falls' on a merchant's premises." *Davis*, 774 So. 2d at 90.

[7] There is no allegation that Wal-Mart created the hazardous condition which caused the damage. Therefore, liability can only be found upon actual or constructive notice.

6

prior to the accident. (Sibley Dep., R. Doc. 20 at 20) ("Q. Did she tell you whether she saw the spill? A. . . . she didn't see the spill."). Mr. Fuller consistently testified that he had "no idea," either personally or from any outside source, whether a Wal-Mart employee knew the substance was on the floor prior to his wife's fall. (W. Fuller Dep., R. Doc. 12-3 at 20).

Because Plaintiffs cannot show a genuine issue of material fact regarding Wal-Mart's actual notice, they must show an issue of material fact concerning Wal-Mart's constructive notice to survive summary judgment. *Davis v. Target Corp. of Minn.*, No. 11-0802, 2012 WL 3158875, at *3 (E.D. La. Aug. 3, 2012) (video of employees in the area of the spill prior to plaintiff's fall was insufficient evidence of actual notice to survive summary judgment because video did not show employees actually see the spill).

### ii.     Constructive Notice

"Constructive notice" means the plaintiff has proven "that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. Rev. Stat. § 9:2800.6(C)(1). The phrase "such a period of time" constitutes a temporal element that must be shown by the plaintiff. *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1084 (La. 9/9/97); *see also Babin v. Winn-Dixie Louisiana, Inc.*, 764 So. 2d 37, 40 (La. 6/30/00); *Kennedy v. Wal-Mart Stores, Inc.*, 733 So. 2d 1188, 1190 (La. 4/13/99). Although a bright line rule establishing a minimum time period does not exist, "[w]hether the period of time is sufficiently lengthy . . . is necessarily a fact question." *Kennedy*, 733 So. 2d at 1190.

"The statute does not allow for the inference of constructive notice absent some showing of this temporal element." *White*, 699 So. 2d at 1084. Therefore, it logically follows that the mere "presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice." La. Rev. Stat. § 9:2800.8(C)(1). While this temporal

7

element "is not an impossible burden," a plaintiff who merely "shows that the condition existed, without an additional showing that it existed for some time," has failed to carry it. *Kennedy*, 733 So. 2d at 1191.

After examining the record, the Court finds the evidence presented by Plaintiffs is insufficient to show the condition existed for such a period of time to establish constructive notice. First, Mrs. Fuller stated in her deposition that she slipped and fell in a puddle appearing to be chicken blood. She testified that she was unaware of how long it had been on the floor and how it got there. She had no information from any source as to whether the Defendants knew of the condition and failed to clean it up. (R. Doc. 12-3 at 16). Similarly, Mr. Fuller testified that he had no idea how the blood got on the floor or how long it had been there. He also "had no idea" as to whether any employee of the Defendant knew that the substance was on the floor and failed to clean it up (R. Doc. 12-3 at 20). *See Martin v. The Kroger Company*, 283 F.3d 1099 (5th Cir. 2001) (plaintiff failed to show condition existed for a sufficient period of time where she admitted she had "no idea" how the hazardous condition got on the floor, or how long it was on the floor before she fell).

Second, Plaintiffs present no evidence regarding the condition of the puddle that would indicate it existed on the floor for some period of time — "i.e., that areas of the spill had dried, that there were shopping cart tracks or footprints in the liquid or that the liquid was dirty, evidencing earlier traffic, etc." *Allen v. Wal-Mart Stores, Inc.*, 850 So. 2d 895, 898 (La. App. 2d Cir. 6/25/03). Here, Mrs. Fuller stated that the puddle "wasn't big" and was "probably" about six inches in diameter. (L. Fuller Dep., R. Doc. 12-3 at 13). She could also see "two slip marks" where her "feet had went through" the puddle. (L. Fuller Dep., R. Doc. 12-3 at 13). However, Mrs. Fuller explained that she "didn't notice" any (1) "drops of chicken blood leading away from

the puddle," (2) packages of chicken meat/product in the area, or (3) "other tracks," aside from her own, through the puddle. (L. Fuller Dep., R. Doc. 12-3 at 14-15). Mr. Fuller consistently testified that the puddle "wasn't real big" — "probably" 15 inches in diameter and "pretty well round." (W. Fuller Dep., R. Doc. 12-3 at 18-19). Other than his wife's "feet marks where she slid," Mr. Fuller did not see any other tracks through the puddle or any other substances on the floor. (W. Fuller Dep., R. Doc. 12-3 at 19).

Considering Plaintiffs' descriptions of the size and nature of the spill, the Court finds them insufficient to create a genuine issue of material fact regarding the length of time the puddle existed. *Compare Allen*, 850 So. 2d at 898 (evidence that liquid was "spread across six to seven feet of floor," without additional evidence of the "method and origin of the spill" was insufficient to survive summary judgment), *with Bagley v. Albertsons, Inc.*, 492 F.3d 328, 331 (5th Cir. 2007) (evidence that spill had originated from shopper's cart that had time to clear the aisle and "covered a significant area extending through the aisle and into an adjourning back aisle" precluded summary judgment), *and Broussard v. Wal-Mart Stores, Inc.*, 741 So. 2d 65, 69 (La. Ap. 3d Cir. 1/20/99) (evidence indicating "spill was elongated, not uniform, and cover[ed] approximately three to four tiles, suggesting it had spread over a period of time," when "combined with the other circumstantial evidence" was sufficient to establish constructive notice).

Third, Plaintiffs' description of a video of the bakery department provided by Wal-Mart is insufficient to establish a genuine issue of material fact regarding the length of time the chicken blood existed on the floor. *See Courville v. Target Corp. of Minn.*, 232 Fed. Appx. 389, 391 (5th Cir. 2007) (dispositive question is whether a plaintiff has "raised a fact issue regarding whether the liquid on the floor existed for a period of time sufficient to give rise to constructive

9

notice"). Plaintiffs explain that Wal-Mart "provided a six (6) minute video of the area approximately one hour before the accident occurred." (R. Doc. 20 at 6). According to Plaintiffs, the video ends at 9:56:53 a.m.; the fall occurred around 10:50 a.m.

Despite the emphasis Plaintiffs place on this video, it is insufficient to make a positive showing that Wal-Mart had constructive knowledge of the spill. Fatally absent from Plaintiffs' description of the video — which was not provided to the Court — is any allegation that it actually shows the puddle of chicken blood on the floor and/or any Wal-Mart employee nearby. Absent this allegation, this video does little more than establish that the bakery department existed prior to the fall. Because Plaintiffs do not claim the video shows a hazardous condition existed in the bakery department, it is insufficient evidence to defeat summary judgment.

Finally, Plaintiffs present the testimony of Wal-Mart manager, Ashley Sibley, who was on duty the day of the accident. In her deposition Sibley described Wal-Mart's safety procedures. First, Sibley explains that Wal-Mart's "Towel in Pocket" ("TIP") safety program encourages employees to carry towels with them for spill clean-up. Second, Wal-Mart conducts large safety sweeps of the store at 7:00 a.m., noon, 5:00 p.m., and late at night/overnight.

Sibley also testified that two Wal-Mart employees were in the bakery department at the time of the spill — Elizabeth Winfrey and Melissa Alexandria. (Sibley Dep., R. Doc. 20 at 12-13). Sibley stated that neither Winfrey nor Alexandria was carrying a company towel at the time, however she explained the bakery department is equipped with a "spill station" containing "all the products we need to take care of any spill or trash on the floor." (Sibley Dep., R. Doc. 20 at 15). According to Sibley, she is unaware of what Alexandria's task was in the bakery department when Mrs. Fuller fell. Winfrey, however, was stocking baking goods in the area.

10

Plaintiffs argue that Winfrey and Alexandria's presence in the bakery department establishes Wal-Mart's constructive knowledge of the spill. According to Mrs. Fuller's testimony, she only recalled one associate in the area, who stood 6 to 10 feet away, with her back turned toward Mrs. Fuller, stocking merchandise at a long table. (L. Fuller Dep., 22-1 at 6, 7). Plaintiffs further speculate that any employee behind the cake counter or in the bakery department could have seen the area where the spill occurred. While Plaintiffs do not offer or cite any supporting evidence, Defendants have provided the Court with a rough diagram of the bakery department — drawn during and attached to Mrs. Fuller's deposition — which shows multiple tables arranged throughout the bakery department. (Exh. B to L. Fuller Dep., R. Doc. 22-1 at 9).

"[M]ere speculation or suggestion is not enough to meet the [plaintiff's] stringent burden" and avoid summary judgment. *Allen*, 850 So. 2d at 898. For example, in *Kennedy v. Wal-Mart Stores, Inc.*, despite the plaintiff's evidence "that the general area where he fell was within view of a customer service podium and that it was raining" the court found for the defendant because the "plaintiff presented absolutely no evidence as to the length of time the puddle was on the floor before his accident." *Kennedy*, 733 So. 2d at 1191. Similarly, in *Babin v. Winn-Dixie, Inc.*, the lower court "speculated that [the] plaintiff could show there was a possibility the boxes had been on the floor for some period of time, and that Winn-Dixie's employee was negligent in failing to observe them." *Babin*, 764 So. 2d at 40. The lower court relied on the plaintiff's evidence that the store "aisle . . . was not inspected for at least ten minutes before he fell" and "on his own deposition testimony that he did not see any Winn-Dixie employees in the area." *Id.* at 40 n.4. On appeal, the Louisiana Supreme Court reversed, explaining that mere "speculation falls short" of satisfying the constructive notice element of the

claim. *Id.* at 40. According to the court, none of the plaintiff's "evidence constitutes factual support sufficient to establish that . . . the toothpick boxes had been on the floor for some period of time." *Id.* at 40 n.4.

Accordingly, Defendants have appropriately set forth the absence of factual support for an essential element of Plaintiffs' claim – the actual or constructive notice element. Plaintiffs have failed to offer evidence to indicate that a genuine issue of material fact remains with respect to this element. Therefore, summary judgment is appropriate in this case.

### B. Mr. Fuller cannot recover for loss of consortium

Mr. Fuller, Mrs. Fuller's husband, alleges damages for loss of consortium resulting from his wife's injuries.[8] Louisiana law recognizes a cause of action for loss of consortium by family members, including the spouse, of the primary tort victim. *See, e.g.*, La. Civ. C. art. 2315(B) ("Damages may include loss of consortium, service and society and shall be recoverable by" any person capable of bringing a wrongful death action); La. Civ. C. art. 2315.2(A)(1) (a spouse may bring an action for wrongful death).[9] Although Mr. Fuller's loss of consortium claim exists as a separate cause of action, it is a "derivative" claim — "i.e., one arising from another source; not original" — which relies upon a finding that Wal-Mart is liable for Mrs. Fuller's injuries. *See, e.g., Gilbert v. Laborde*, 632 So. 2d 1162, 1169 (La. App. 3d Cir. 2/2/94) (loss of consortium damages requires proof of "three things: the liability of the defendant, his or her spouse's damages, and his or her consequent loss of consortium damages"); *Ferrell v. Fireman's Fun Ins. Co.*, 696 So. 2d 569, 576 (La. 7/1/97) (finding "as a matter of law that loss of consortium claims are derivative of the primary victim's injuries").

---

[8] The Court notes that neither party briefed or mentioned Mr. Fuller's loss of consortium. Nonetheless, briefing is unnecessary where the Court is dismissing the primary tort action – Mrs. Fuller's slip and fall claim.

[9] The compensable elements of the claim include loss of: (1) love and affection; (2) companionship; (3) material services; (4) support, aid and assistance; and (5) sexual relations. *Ferrell*, 696 So. 2d at 573 n.4.

12

As Ms. Fuller's spouse, Mr. Fuller is among the category of individuals who may recover for loss of consortium. However, because his claim is derivative of his wife's, the Court's dismissal of Mrs. Fuller's negligence claim renders moot Mr. Fuller's claim for loss of consortium. *See, e.g.*, *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1031 n.22 (La. 8/31/00) ("Having found that Nicholas is not entitled to recovery, we further find that Neva Nicholas's claim for loss of consortium also falls because her claim is derivative of her husband's."); *Gilbert*, 632 So. 2d at 1167 ("The jury's finding that Dr. Laborde did not cause Mrs. Gilbert's injury rendered moot Clyde Gilbert's claim for loss of consortium."); *Hinkel v. St. Jude Medical, S.C.*, 869 F. Supp. 2d 739, 748 n.9 (E.D. La. 2012) ("Under Louisiana law, "a loss of consortium action is a derivative claim of the primary victim's injuries. Thus, because the Court finds that Mrs. Hinkel's claims are preempted, Mr. Hinkel's loss of consortium claims are barred, as well."); *Reed v. Chemlink, Inc.*, No. 90-3942, 1991 WL 161475, at *6 (E.D. La. Aug. 8, 1991) ("Because Ms. Reed's tort claims against Chemlink are dismissed, Michael Reed has no claim for loss of consortium under Louisiana law.").

## IV. CONCLUSION

Accordingly, for the reasons assigned, Defendants' motion for summary judgment (R. Doc. 12) is **GRANTED**, and this matter is **DISMISSED**, with prejudice.

Signed in Baton Rouge, Louisiana, on August 13, 2013.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**